NATHAN M. SIEDMAN
California State Bar No. 282646
Law Office of Nathan M. Siedman
P.O. Box 874
Bolinas, CA 94924
Telephone:    (415) 868-1891
E-Mail:      nathan@siedmanlaw.com

Attorney for Plaintiff
KENNETH LEE TAYLOR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. _____

KENNETH LEE TAYLOR,

          Plaintiff,

v.

CDCR Correctional Officer C. Medina;
CDCR Correctional Officer M. Chavez;
CDCR Dr. Kuerston; and
CDCR staff Does 1-30,

          Defendants.

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND STATE LAW**

**DEMAND FOR JURY TRIAL**

**1. Excessive Force (8th Amend. & Cal. Const. Art. I, Sec. I)**
**2. Retaliation (1st Amendment)**
**3. Deliberate Indifference to Serious Medical Needs (8th Amendment)**
**4. Violation of Right to Petition Gov. for Redress of Grievances (1st Amend)**

     Plaintiff, Kenneth Lee Taylor, by and through his attorney, Nathan M. Siedman, complains against Defendants and requests trial by jury as follows:

## I.

## JURISDICTION AND VENUE.

    1.    This complaint seeks damages and attorneys' fees pursuant to Title 42 U.S.C. sections 1983 and 1988 for violations of plaintiff's civil rights and violations of

California State law. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.    Plaintiff's claims arose in the County of Solano, California. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

## II.

## INTRODUCTION.

3.    This is an action brought by Kenneth Lee Taylor ("Plaintiff"), a 64-year-old disabled inmate who walks with a cane, wears a vest that says: "MOBILITY IMPAIRED" and is a well known jailhouse lawyer who files lots of lawsuits against correctional officers for violating inmates' rights.

4.    On June 27, 2017, defendant, CDCR correctional officer C. Medina, stopped Plaintiff and denied him access to his counselor's office where Plaintiff had been summoned to review his transcript in *Taylor v. Miller, et al.,*Case No. 3:16-cv-00874-VC. Medina deprived Plaintiff of his right to review his transcript to retaliate against him for having sued Medina's fellow correctional officers. Medina made clear that his intent was to deny Plaintiff his First Amendment right to petition the government for redress of grievances: "Your ass ain't suing nobody today."

5.    Defendant Medina and defendant, CDCR correctional officer M. Chavez, with deliberate indifference to Plaintiff's serious medical needs, used excessive force to twist Plaintiff's hands behind his back and raise them up behind his head injuring Plaintiff's spine and causing him to cry out in pain. Then Medina and Chavez slammed Plaintiff to the ground causing him further injury.

6.    At least four other correctional officer witnessed Defendants Medina and Chavez stop Plaintiff from exercising his First Amendment rights and use excessive force against Plaintiff in violation of his Eighth Amendment rights but each of them failed to protect Plaintiff in violation of Plaintiff's Eighth Amendment rights.

**Plaintiff's Complaint for Damages**

7.    At least four inmates witnessed Plaintiff get stopped, strong-armed and slammed to the ground.

8.    Plaintiff spasmed face down on the ground while he was handcuffed behind his back.

9.    The first responding medic observed the following: "Inmate found handcuffed from behind laying face down on ground trembling, whimpering. Unable to obtain b[lood] p[ressure] and temp[erature] since he was trembling so bad."

10.    Plaintiff was rushed to the hospital where he stayed for three days to recover from serious medical injuries to his spine and left hand.

11.    Plaintiff was returned to prison with orders from his doctor to receive pain-relief injections but Defendant, CDCR Dr. Kuerston, with deliberate indifference to Plaintiff's serious medical needs, refused to give Plaintiff any injections.

12.    Plaintiff lodged an inmate appeal complaining that he was injured by correctional officers using excessive force. To protect themselves and their co-workers, CDCR staff maliciously conspired to deny Plaintiff's civil rights. Specifically, not one correctional officer who participated in or witnessed the attack made any report of the incident despite each of them being required to do so. When a report was finally filed it was late, intentionally misleading, disingenuously omitted necessary information and minimized Plaintiff's injuries. The investigation into Plaintiff's injuries was a sham: Plaintiff's witnesses were never investigated and the investigator never watched the surveillance video. In the end they got the result they wanted: "no policy violation."

13.    Plaintiff was eventually sent back to the hospital where they rushed him to the operating room for emergency spinal surgery.

### III.
### PARTIES.

14.    At all times relevant hereto, Plaintiff Kenneth Lee Taylor was a resident of the State of California and a citizen of the United States of America.

15. California Department of Corrections and Rehabilitation (CDCR) Correctional Officer C. Medina was at all times mentioned herein a correctional officer working at California State Penitentiary Solano (CSPS) under color of state law.

16. CDCR Correctional Officer M. Chavez was at all times mentioned herein a correctional officer working at CSPS under color of state law.

17. Upon information and belief, CDCR employee, Dr. Kuerston was at all times mentioned herein a medical doctor working at CSPS under color of state law.

18. Upon information and belief, Defendant Doe 1, the correctional officer on duty at CSPS at or about 12:45 p.m. on June 27, 2017, (if different from correctional officer Medina or Chavez), was at all times mentioned herein a correctional officer working at CSPS who was acting under color of state law. The true name and identity of defendant Doe 1, the correctional officer on duty, is presently unknown to Plaintiff. Plaintiff will seek to amend this complaint as soon as the true name and identity of Doe 1 is ascertained.

19. Upon information and belief, Dendants Does 2-5, the correctional officers on duty in the yard at CSPS at or about 12:45 p.m. on June 27, 2017, who witnessed Defendant Medina and Defenant Chavez violate Plaintiff's First Amendment Rights were at all times mentioned herein correctional officers working at CSPS who were acting under color of state law. The true names and identities of Defendants Does 2-5 are presently unknown. Plaintiff will seek to amend this complaint as soon as the true names and identities of Does 2-5 are ascertained.

20. Upon information and belief, Dendants Does 6-10, the correctional officers on duty in the watch towers overlooking the yard at CSPS at or about 12:45 p.m. on June 27, 2017, who witnessed Defendant Medina and Defenant Chavez violate Plaintiff's First Amendment Rights were at all times mentioned herein correctional officers working at CSPS who were acting under color of state law. The true names and identities of Defendants Does 6-10 are presently unknown.

**Plaintiff's Complaint for Damages**

Plaintiff will seek to amend this complaint as soon as the true names and identities of Does 6-10 are ascertained.

21. Upon information and belief, Dendants Does 11-15, the correctional officers responsible for the surveillance video of the attack on Plaintiff were at all times mentioned herein correctional officers working at CSPS who were acting under color of state law. The true names and identities of Defendants Does 11-15 are presently unknown. Plaintiff will seek to amend this complaint as soon as the true names and identities of Does 11-15 are ascertained.

## IV.
## COMPLIANCE WITH GOVERNMENT TORT CLAIM PROCEDURES.

22. On October 30, 2017, as a prerequisite to the state law claims alleged herein against Stae of California employees/agents, Plaintiff filed a governemental claim form.

23. A ruling on Plaintiff's claim is pending.

24. This action must be filed within six months of the rejection by the California Victims Compensation and Government Claims Board.

## V.
## STATEMENT OF FACTS.

**A.    Plaintiff is Well Known for Suing Correctional Officers.**

25. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

26. Plaintiff is a "jailhouse lawyer." He is a self-trained paralegal with an extensive understanding of prison regulations. (Cal. Code Regs., tit. 15.) Plaintiff routinely sues correctional officers for violations large and small.

27. Plaintiff's reputation for suing correctional officers is well established among the prison staff, including Defendant C. Medina.

**B.    Plaintiff is Disabled.**

28.    Prior to June 26, 2017, Plaintiff had been diagnosed by CDCR as having the following ongoing conditions: coronary artery disease, cataracts, chest pain, chronic LBP, carpal tunnel syndrome, hypertension, hyperlipemia, lumbar spondylosis, osteoarthritis of the knee and proteinuria.

29.    Due to his serious and chronic medical conditions Plaintiff was diagnosed as being permanently disabled.

30.    Plaintiff was prescribed and issued a walking cane per the Americans with Disabilities Act (ADA).

31.    Plaintiff was prescribed and issued a highlighter-yellow vest that reads on the front and back: "MOBILITY IMPAIRED."

**Defendant Medina Wantonly Deprives Plaintiff of his First Amendment Right to Petition the Government for a Redress of Grievances.**

32.    On January 15, 2016, Plaintiff filed a civil rights claim against CDCR correctional officers, including correctional officer M. Medina in *Taylor v. Medina, et al*. (Case No. 3:16-cv-00266-VC). Defendant C. Medina intended to retaliate against Plaintiff for suing correctional officers.

33.    On June 27, 2017, at approximately 12:45 p.m., the tower nine control officer, J. Gallegos announced that Plaintiff had been summoned by his counselor, CCI Truong, in building twelve.

34.    Officer Gallegos issued Plaintiff a pass to see his counselor in building twelve.

35.    Wearing his fluorescent "MOBILITY IMPAIRED" vest and using his ADA issued walking cane, Plaintiff took the pass, exited building nine and crossed the yard toward building twelve.

36.    Plaintiff passed approximately six correctional officers on the Southern Mexican handball court.

37.    "Where the fuck do you think you're going?" yelled Defendant Medina from amongst the group of officers.

38. Plaintiff told Medina that he was going to see counselor Truong whom had summoned him.

39. "***Your ass ain't suing nobody today***!" said Defendant Medina. "And you're not seeing no fucking counselor."

40. Plaintiff showed Medina the pass he had been issued by J. Gallegos.

41. Medina tore up Plaintiff's pass, declaring: "Now you don't have no fucking pass."

42. Plaintiff demanded to speak with Medina's supervisor, Sergeant Smith.

43. Medina refused: "You ain't seeing no sergeant either."

44. A second correctional officer, Defendant M. Chavez, came over and stood alongside Medina.

45. Plaintiff insisted to speak with Sergeant Smith. Medina refused.

46. Medina gave Plaintiff the choice to either "cuff up and I'll escort you back to building nine or you're going to have a real problem."

47. Plaintiff, not wanting to have any problem, offered his left wrist to Medina and explained that because of his medical condition he nees to be handcuffed in the front of his body so he can use his cane.

48. Plaintiff's plea went unheeded. Medina snatched Plaintiff's left hand, twisted it behind Plaintiff's back and raised it up toward his head. Chavez knocked away Plaintiff's cane, grabbed Plaintiff's right hand and twisted it behind Plaintiff's back and up toward his head.

49. Taylor cried out in pain as Medina and Chavez took him to the ground.

50. On the ground, Plaintiff spasmed and wailed.

51. Inmates who had witnessed the incident derided Medina and Chavez for ignoring Plaintiff's frailty and for excessively forcing his hands behind his back and hurting him.

52. An ambulance was called for Plaintiff.

**Plaintiff's Complaint for Damages**

**C.    Medina & Chavez Caused Plaintiff Serious Medical Injuries.**

53.    The first responder, Zackary Eaton RN, recorded the scene thusly: "Inmate found handcuffed from behind laying face down on ground trembling whimpering. Unable to obtain b[lood] p[ressure] and temp[erature] since he was trembling so bad."

54.    Nurse Eaton recorded that Plaintiff's pain level was 10 our of 10.

55.    Plaintiff was taken by ambulance to San Joaquin General Hospital (SJGH).

56.    On June 28, 2017, a SJGH doctor described Plaintiff as: "nervous, hyperventilation, shaking."

57.    SJGH Doctor K. Win noted that Plaintiff's "spinal instability" injuries were "not present on last year's x-ray or on last months' MRI."

58.    Plaintiff was sent to the Emergency Room as a code 2 in need of a "higher level of care."

59.    SJGH Dr. Saito diagnosed Plaintiff as follows:

    1.    Severe central stenosis at L3-4 with severe bilateral formainla stenosis.

    2.    Severe central stenosis at L4-5 with severe bilateral formainla stenosis.

    3.    Severe bilateral formainla stenosis at L5-S1

    4.    Fluid in the disks at L3-4 and L4-5.

60.    On June 29, 2017, Plaintiff was diagnosed with "intractable back pain, secondary to severe central stenosis at L3-L5 with severe bilateral foraminal stenosis, as well as severe bilateral foraminal stenosis at L5-S1."

**D.    CDCR Fails to Provide Plaintiff with the Medical Treament Ordered by SJGH.**

61.    On June 29, 2017, SJGH neurologist Dr. Oladunjoye prescribed Plaintiff with "epidural steroid injections and more physical therapy."

62.    On June 30, 2017, Plaintiff was released from San Joaquin General Hospital and returned to prison in a wheelchair.

63.   On July 1, 2017, to obtain the pain-relieving injections prescribed him by Dr. Oladunjoye, Plaintiff submitted CDCR Health Care services Request Form 7362.

64.   On July 5, 2017, CDCR's doctor noted that Plaintiff was supposed to receive pain-relieving epidural injections but Plaintiff didn't receive any.

65.   On July 13, 2017, Plaintiff filed a second CDCR Health Care services Request Form 7362 renewing his request for pain-relieving epidural injections. Plaintiff still received none.

66.   On July 23, 2017, Plaintiff filed a third CDCR Health Care services Request Form 7362 again requesting his prescribed injections.

67.   On July 25, 2017, CDCR Dr. Largoza approved epidural injections for Plaintiff but Dr. Largoza did not give Plaintiff any injections.

68.   On July 26, 2017, Plaintiff filed a fourth CDCR Health Care services Request Form 7362 for emergency medical treatment.

69.   On July 27, 2017, CDCR dismissed Plaintiff's request because Plaintiff was complaining about the "same problem."

70.   On July 28, 2017, CDCR Dr. D.B. Williams requested pain-relieving epidural injections for Plaintiff.

71.   On August 3, 2017, Defendant, CDCR Dr. Martin Kuersten, denied Dr. Williams's request for epidural injections as follows: "lacks medical evidence of long-term benefits."

72.   On August 7, 2017, Plaintiff filed a fifth CDCR Health Care services Request Form 7362 as follows: "I was supposed to receive spinal epidural steroid injections and left hand medical treatment. I'm being lied to and no medical treatment has been done since 06/30/17."

73.   On August 14, 2017, Plaintiff filed a sixth CDCR Health Care services Request Form 7362 complaining: "I've being [sic] ignored with deliberate indifference and forced to endure suffering and debilitating pains endlessly! I need to see the M.D. Doctor on an Emergency Basis!"

74. On August 16, 2017, CDCR registered nurse Hemmy Bacareza recorded the following statement by Plaintiff: "I need the injection. The pain meds is not really helping." Bacareza did not give Plaintiff any injections.

**E.    CDCR Dr. Ko Returns Plaintiff to SJGH for the Treatment Ordered Seven Weeks Prior.**

75. On August 18, 2017, CDCR Dr. Francis Ko noted that Plaintiff was complaining of a "burning pain down his left leg all the way to the toes."

76. At 1:50 p.m Dr. Ko spoke with Plaintiff's doctor at SJGH.

77. At 1:58 p.m. Dr. Ko sent Plaintiff to SJGH with the following note: "Need epidural injection as ordered [by] SJGH on 6-30-17."

**F.    SJGH Doctors Rush Plaintiff for Immediate Spinal Surgery.**

78. On August 19, 2017, Dr. Oladunjoye noted: "This patient was initially seen by me on 06/29/17… [H]e was discharged with attempted conservative management with epidural injections. He was not approved [by CSPS] for epidural injections. Then he progressed to have continued worsening of his symptoms."

79. That same day, Dr. Moris Senegor noted: "epidurals were denied by the prison physicians… he has received no treatment. In the meanwhile, there has been a worsening of the same pain…. I reviewed … the same study that Dr. Oladunjoye based his opinions on when he gave his initial consulation. The study shows severely degenerated disks…. They are essentially completely collapsed…. [T]he patient will need surgery."

80. Plaintiff was taken "urgently to the OR" at SJGH where he underwent surgery on his spine.

**G.    The Conspiracy to Cover Up Medina's & Chavez's Excessive Use of Force.**

*1.    CDCR Reporting Requirements.*

81. Every staff use of force is an incident that shall be reported to a supervisor and shall submit appropriate documentation and shall do so prior to being relieved

from duty. (Cal. Code Regs., tit. 15, § 3268.1, subd. (a).)

82.   Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. (Cal. Code Regs., tit. 15, § 3268.1, subd. (c).)

83.   Unnecessary Force is the use of force when none is required or appropriate. (Cal. Code Regs., tit. 15, § 3268, subd. (a)(2).)

84.   Excessive force is the use of more force than is objectively reasonable to accomplish a lawful purpose. (Cal. Code Regs., tit. 15, § 3268, subd. (a)(3).)

85.   Reasonable Force is "force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." (Cal. Code Regs., tit. 15, § 3268, subd. (a)(1).)

86.   Unnecessary or excessive force shall not be used. (Cal. Code Regs., tit. 15, § 3268, subd. (b).)

87.   It is the policy of the CDCR to "accomplish the departmental functions with minimal relianceon the use of force." (Cal. Code Regs., tit. 15, § 3268, subd. (b).)

### 2.   *No CDCR Staff Made Any Reports.*

88.   Neither Medina nor Chavez filed any report about their use of force against Plaintiff.

89.   On information and belief, one or more correctional officers observed the use-of-force incident from the guard towers above the yard but none filed any incident reports.

90.   On information and belief, approximately four correctional officers observed the use-of-force incident from the Southern Mexican handball court but none filed any incident reports.

91.   On July 5, 2017, upon returning from SJGH, Plaintiff requested a copy of the use-of-force reports and medical reports filed in relation to the incident that

1    caused his hospitalization. Dr. Ko told Plaintiff that there were no reports.

2    92.    On July 6, 2017, Plaintiff asked his counselor, CCI Truong, for copies of the use-
3         of-force reports and medical reports. CCI Truong told Plaintiff that there were no
4         reports.

5    93.    On July 6, 2017, Plaintiff asked Sergeant C. Smith, for copies of the use-of-force
6         and medical reports. Sergeant Smith told Plaintiff that there were no reports.

7    94.    On July 11, 2017, Plaintiff was informed that there was no CDCR-7219 Medical
8         Injury Report in his medical record. He was advised to check in his central file.

9         **3.    *The Untimely and Intentionally Misleading Report.***

10   95.    On July 18, 2017, three weeks after Plaintiff's injury, Mark F. Russo, filed a
11        report that characterized Plaintiff's injury as an: "UNUSUAL OCCURRENCE."
12        Russo's report had the wrong date, omitted any mention of Plaintiff's spinal
13        injury and minimized the extent of Plaintiff's injuries to a "slightly swollen"
14        wrist.

15   96.    On July 18, 2017, Plaintiff challenged Russo's report via CDCR-602 HC.

16        **4.    *The Investigator's Bad Faith Refusal to Watch the Surveillance*
17             *Video.***

18   97.    A good faith effort must be made at all levels of review in order to reach a
19        judgment whether a use of force was in compliance with regulations and
20        applicable law. (Cal. Code Regs., tit. 15, §3268.1, subd. (e)(1).)

21   98.    There are security cameras that record the prison yard where Medina and Chavez
22        used force that injured Plaintiff.

23   99.    On information and belief, CDCR policies require surveillance videos to be
24        preserved for a reasonable period of time following an incident such as a use-of-
25        force so they may be viewed for purposes of training, investigation or other
26        legitimate purposes.

27   100.   On information and belief, one or more CDCR employees are responsible for the
28        preservation of the surveillance videos.

101.  On July 7, 2017, pursuant to California Code of Regulations, title 15, section 3268.1, subdivision (d)(2), Sergeant C. Smith, interviewed Plaintiff as part of his investigation into Plaintiff's claim that Medina and Chavez had used unnecessary and excessive force. Smith's interview of Plaintiff was videotaped.

102.  Plaintiff told Sergeant Smith: "It's all on tape! Just go look at the B-yard tape!" Plaintiff was so confident that the surveillance video would corroborate his complaints that he requested a copy of the surveillance tape be preserved for future litigation as well.

103.  On July 13, 2017, Plaintiff submitted a written request that the investigators view the surveillance tape and that the litigation office acquire the video for pending litigation.

104.  Plaintiff received no response.

105.  On July 30, 2017, Plaintiff renewed his request.

106.  On August 7, 2017, Plaintiff's request was denied by S.W. Brown as follows: "there are no recordings on file that can be relinquished."

**5.    The Investigator's Bad Faith Refusal to Interview Plaintiff's Witnesses.**

107.  A good faith effort must be made at all levels of review in order to reach a judgment whether a use of force was in compliance with regulations and applicable law. (Cal. Code Regs., tit. 15, §3268.1, subd. (e)(1).)

108.  On July 7, 2017, Plaintiff offered Sergeant Smith a list of inmates who had witnessed Medina stop Plaintiff, rip up his pass and together with Chavez use unnecessary and excessive force against Plaintiff.

109.  On July 8, 2017, Plaintiff provided Sergeant Smith with a CDCR-22 wherein he provided a list of the following inmate witnesses:

1.    Edward Earl Allen (CDCR No. B-81763);

2.    Terry Coleman (CDCR No. AZ-9891);

3.    Andre Williams (CDCR No. K-11315); and

4.    Miguel Young (CDCR No. T-03767).

110.    Lieutenant J. Rubalcaba, refused to interview any of Plaintiff's witnesses.

111.    Lieutenant J. Rubalcaba falsely claimed that "no inmate witnesses were provided."

112.    Lieutenant J. Rubalcaba only interviewed correctional officers "C. Medina, M. Chavez, J. Gallegos, CCI A. Truong, and Sgt. C. Smith."

**6.    *The Investigator's Conclusion that CDCR Did No Wrong.***

113.    On August 15, 2017, Warden, E. Arnold, concluded that "Staff did not violate CDCR policy."

114.    On August 20, 2017, associate warden, R. Mitchell, summarized the Investigator's Conclusion as follows: "the incident which took place was not determined to be a use of force. (See appeal log #CSP-S-17-01507)."

**7.    *Medina Was Promoted Following the Investigation.***

115.    On information and belief, Medina was cleared of any wrongdoing, not disciplined and was promoted to the security squad as an Insititutional Gang Investigator or Institutional Security Unit.

**H.    Plaintiff Exhausted His Administrative Remedies.**

116.    On July 2, 2017, Plaintiff filed an administrative appeal (Log No. CSP-S-17-01507) alleging that force used by Medina and Chavez that injured him on June 27, 2017, was unnecessary and excessive.

117.    On July 10, 2017, the first level response was bypassed and the appeal was assigned for second level review.

118.    On August 17, 2017, dissatisfied with the second level response, Plaintiff prepared his third level appeal.

119.    On August 18, 2017, before Plaintiff could submit his third level appeal, he was sent to SJGH for emergency surgery.

120.    Due to his medical necessity, Plaintiff was unable to timely submit his third level appeal. His appeal (CSP-S-17-01507) was dismissed as untimely.

121.  On March 13, 2018, appeals examiner K.J. Allen granted Plaintiff's request (No. OOA-17-14118) to file an otherwise untimely third level appeal and ordered CDCR staff to accept and process Plaintiff's appeal No. CSP-S-17-01507.

122.  As of the date of this complaint, Plaintiff has not received any decision from the third level of review. Plaintiff has exhausted to the best of his abilities his administrative remedies but must file this complaint now to comply with the one-year statute of limitations.

## VI.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (EXCESSIVE FORCE 8TH AMENDMENT)
### 42 U.S.C. § 1983 – Excessive Force in violation of the Eighth Amendment
### and California Constitution, Article I, Section I
### (Against defendants Medina and Chavez)

123.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

124.  42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress ….

125.  Plaintiff in this action is a citizen of the United States and all of the individual CDCR employees, staff and correctional officer defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

126. All individual defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as CDCR correctional officers and their acts or ommissions were conducted within the scope of their official duties or employment.

127. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Eighth Amendment and California Constitution to be free from excessive force by prison staff.

128. Any reasonable correctional officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

129. Defendants Medina and Chavez used force that was objectively unreasonable in light of the facts and circumstances confronting them and violated the Eighth Amendment rights of Plaintiff.

130. Defendants Medina's and Chavez's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally proteceted rights. The force used by these defendant correctional officers shocks the conscience and violated the Eighth Amendment rights of Plaintiff.

131. Defendants Medina and Chavez unlawfully seized Plaintiff by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Plaintiff of his freedom.

132. None of the defendant officers took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of Medina and Chavez despite being in a position to do so. They are each therefore liable for the injuries and damages resulting from each other officer.

133. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

**Plaintiff's Complaint for Damages**

134. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that hey would cause Platiniff severe physical and emotional injuries.

135. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

136. These individual defendants acted in concert and joint action with each other.

137. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutiaonal rights and caused him other damages.

138. These individual defedants are not entitled to qualified immunity for the complained of conduct.

139. As a proximate result of defendants' unlawful conduct, plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

140. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

141. In addition, Plaintiff is entitled to punitive damages against each of the individually named defendants under 42 U.S.C. §1983, in that the actions of each of these individual defendants have been taken maliciously, willfullly or with a reckless or wanton disregard of the contiuional rights of Plaintiff.

## SECOND CLAIM FOR RELIEF
## (RETALIATION 1ST AMENDMENT)
### 42 U.S.C. §1983 – Retaliation in violation of the First Amendment
### (Against defendant Medina)

142. Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

**Plaintiff's Complaint for Damages**

143. Plaintiff in this action is a citizen of the United States and all of the individual CDCR employees, staff and correctional officer defendants to this claim are persons for purposes of 42 U.S.C. §1983.

144. Defendant Medina was at all times relevant hereto acting under the color of state law in his capacity as a CDCR correctional officer and his acts or ommissions were conducted within the scope of his official duties or employment.

145. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the First Amendment to be free from retaliation for exercising his constitutional rights.

146. Any reasonable correctional officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

147. Plaintiff exercised his constitutionally protected right to pursue a lawsuit against correctional officers by visiting his counselor's office to review his deposition.

148. Defendant Medina took adverse action against Plaintiff because Plaintiff had exercised his constitutionally protected right to sue correctional officers – "Your ass ain't suing nobody today." Medina's actions more than chilled Plaintiff's First Amendment Rights and would deter a person of ordinary firmness from continuing to engage in protected conduct.

149. Medina's actions did not reasonable advance a legitimate correctional goal.

150. Retaliatory animus for Plaintiff's exercise of his constitutionally protected right to pursue a lawsuit against correctional officers was Medina's motivating factor. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

151. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

152. Defendants are not entitled to qualified immunity for the complained of conduct.

**Plaintiff's Complaint for Damages**

153.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered
        actual physical and emotional injuries, and other damages and losses as described
        herein entitling him to compensatory and special damages, in amounts to be
        determined at trial. As a further result of the Defendants' unlawful conduct,
        Plaintiff has incurred special damages, including medically related expenses and
        may continue to incur further medically and other special damages related
        expenses, in amounts to be established at trial.

154.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-
        judgment interest and costs as allowable by federal law. There may also be
        special damages for lien interests.

155.    In addition to compensatory, economic, consequential and special damages,
        Plaintiff is entitled to punitive damages against each of the individually named
        Defendants under 42 U.S.C. § 1983, in that the actions of each of these
        individual Defendants have been taken maliciously, willfully or with a reckless
        or wanton disregard of the constitutional rights of Plaintiff.

### THIRD CLAIM FOR RELIEF

### (DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

### 8TH AMENDMENT)

### Violation of the 8th Amendment of the U.S. Constitution

### (Against Defendant Dr. Kuerston)

156.    Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set
        forth herein.

157.    Plaintiff in this action is a citizen of the United States and all of the individual
        CDCR employees, staff and correctional officer defendants to this claim are
        persons for purposes of 42 U.S.C. §1983.

158.    Defendant Dr. Kuerston was at all times relevant hereto acting under the color of
        state law in his capacity as a CDCR medical provider and his acts or ommissions

1    were conducted within the scope of his official duties or employment.

159.    Defendant had a duty to provide Plaintiff with adequate medical care.

160.    Plaintiff had a serious medical need as described by his doctors at SJGH.

161.    Defendant knew that Plaintiff had a serious medical need because Plaintiff was deemed by CDCR to be disabled and had recently returned to CSPS with orders from his doctor to have pain-relieving epidural injections. Additionally, Plaintiff complained to CDCR medical staff about his need for pain relief.

162.    Defendant intentionally and deliberately failed to provide Plaintiff with the treatment required, namely the epidural injections for his spinal pain.

163.    Defendant knew of the risk of harm when he refused to implement the recommendations of the multiple other doctors who had requested the injection treatment for Plaintiff.

164.    As a result of Defendant's intentional and deliberate failure, Plaintiff suffered unneeded pain and suffering that required spinal surgery.

165.    Despite knowing that Plaintiff was in danger of serious harm to his health and safety, Defendants failed to provide him with necessary care in violation of CDCR policy.

166.    Defenants failure constituted deliberate indifference to Plaintiff's serious medical needs, health and safety.

167.    As a direct and proximate result of Defendants' conduct, Plaintiff experienced the damges alleged herin, including but not limited to physical pain and suffering, emotional distress and mental anguish.

168.    The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Plaintiff's Complaint for Damages**

## FOURTH CLAIM FOR RELIEF

## (VIOLATION OF RIGHT TO PETITION GOVERNMENT

## FOR REDRESS OF GRIEVANCES)

### (Against defendant Medina)

169. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herin.

170. Plaintiff in this action is a citizen of the United States and all of the individual CDCR employees, staff and correctional officer defendants to this claim are persons for purposes of 42 U.S.C. §1983.

171. Defendant Medina was at all times relevant hereto acting under the color of state law in his capacity as a CDCR correctional officer and his acts or ommissions were conducted within the scope of his official duties or employment.

172. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the First Amendment to pursue litigation without active interference.

173. Any reasonable correctional officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

174. Plaintiff exercised his constitutionally protected right to pursue a lawsuit against correctional officers by visiting his counselor's office to review his deposition.

175. Defendant Medina intentionally interfered with Plaintiff's constitutional right to pursue litigation – "Your ass ain't suing nobody today."

176. Medina's actions injured Plaintiff insofar as he was unable to review his deposition transcript to correct any errors that may have been contained therein.

177. Medina's actions injured Plaintiff insofar as Plaintiff was chilled from pursuing future litigation.

178. As a direct and proximate result of the aforementioned failure to supervise, investiage and/or discipline, Plaintiff suffered the damages alleged herein,

**Plaintiff's Complaint for Damages**

including but not limited to physical pain and suffering, emotional distress and mental anguish.

## VII.

## PRAYER FOR RELIEF

179.  Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

    A.    Compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

    B.    Punitive damages on all claims allowed by law against individual Defendants and in the amount proven at trial;

    C.    attorney's fees and costs associated with this action under 42 U.S.C. § 1988 and as otherwise authorized by statute or law, including expert witness fees, on all claims allowed by law;

    D.    any further relief that this court deems just and proper, and any other appropriate relief at law and equity.


Dated:   June 26, 2018

                            Respectfully submitted,


                            /s/    *Nathan M. Siedman*
                            NATHAN M. SIEDMAN

                            Attorney for Plaintiff
                            KENNETH LEE TAYLOR

## VIII.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.


Dated:   June 26, 2018


/s/_____Nathan M. Siedman_____
NATHAN M. SIEDMAN

Attorney for Plaintiff
KENNETH LEE TAYLOR




## IX.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.


Dated:   June 26, 2018

Respectfully submitted,


/s/_____Nathan M. Siedman_____
NATHAN M. SIEDMAN

Attorney for Plaintiff
KENNETH LEE TAYLOR


**Plaintiff's Complaint for Damages**

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of Marin County. I am over the age of eighteen years and not a party to the within above entitled action. My business address is P.O. Box 874, Bolinas California, 94924. My electronic service address is nathan@siedmanlaw.com.

On June 26, 2018, I served the within **PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND STATE LAW and DEMAND FOR JURY TRIAL** on the interested parties in said action causing to be placed a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in a United States Post Office box addressed to the parties as follows:

C. Medina, Correctional Officer          M. Chavez, Correctional Officer
Solano State Prison                             Solano State Prison
P.O. Box 4000                                     P.O. Box 4000
Vacaville, CA 95696-4000                  Vacaville, CA 95696-4000
(Defendant)                                        (Defendant

Doctor Kuerston                               Kenneth Lee Taylor (J-89634)
Solano State Prison                             CSP-SOL (Level 2)
P.O. Box 4000                                     Fac. D, Bldg. 19, Bed 130-Low
Vacaville, CA 95696-4000                  P.O. Box 4000
(Defendant)                                        Vacaville, CA 95696-4000
                                                          (Plaintiff)

California Attorney General's Office      Office of the Litigation Coordinator
Civil Division, Correctional Law Section  Solano State Prison
455 Golden Gate Avenue                    P.O. Box 4000
Suite 11000                                        Vacaville, CA 95696-4000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 26, 2018.

/s/    *Nathan M. Siedman*
NATHAN M. SIEDMAN

**Plaintiff's Complaint for Damages**